MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:        2023 ME 47
Docket:          Cum-23-25
Submitted
  On Briefs:     June 21, 2023
Decided:         August 10, 2023

Panel:           STANFILL, C.J., and MEAD, JABAR, HORTON, LAWRENCE, and DOUGLAS, JJ.

NEILL EWING-WEGMANN

v.

KATHARINE ALLERDING

HORTON, J.

[¶1]  Katharine Allerding appeals from a judgment of divorce from Neill Ewing-Wegmann entered by the District Court (Portland, *Darvin, J.*) awarding her and Ewing-Wegmann shared parental rights, allocating Father's Day with the child to Ewing-Wegmann, and ordering Allerding to contribute to the fees of the appointed guardian ad litem (GAL).  We affirm the judgment.

## I. BACKGROUND

[¶2]  The parties were married in 2008 and have one child together.  In December 2020, Ewing-Wegmann filed a complaint for divorce against Allerding due to irreconcilable marital differences.  On May 10, 2021, at Ewing-Wegmann's request, a Family Law Magistrate (*Najarian, J.*) appointed a GAL for the child and ordered that Ewing-Wegmann pay all of the GAL's fees

and that the GAL was to spend no more than ten hours on the matter. The GAL appointment order was amended twice. The first amended order, dated March 18, 2022, authorized additional hours for the GAL's work. The second amended order, dated May 25, 2022, authorized additional hours for the GAL and stated that the fees for the additional hours could be subject to reallocation at the final hearing in the matter.

[¶3]  After a final hearing on September 6, 9, and 13, 2022, the court (*Darvin, J.*) issued a divorce judgment on December 29, 2022. "The court found the following facts, which are supported by competent evidence admitted during the hearing." *Whitmore v. Whitmore*, 2023 ME 3, ¶ 3, 288 A.3d 799; *see Littell v. Bridges*, 2023 ME 29, ¶ 3, 293 A.3d 445.

[¶4]  The child was born in 2009 and was twelve years old at the time of the hearing. For much of the child's life, "[Ewing-Wegmann] was an active and engaged parent, and provided substantial [care], if not the primary care[,] of the child." After Ewing-Wegmann left the parties' home in 2020, the child resided with Allerding, and over time the child became estranged from Ewing-Wegmann. During the year before the hearing, Ewing-Wegmann and the child had in-person contact only three times, two of which were in the course

of counseling sessions aimed at promoting reunification between the child and Ewing-Wegmann.

[¶5] What caused "the rapid and severe deterioration of the relationship between [Ewing-Wegmann] and [the] child" is unclear. Ewing-Wegmann contends that Allerding caused the estrangement by encouraging the child not to see him. According to Allerding and the child's therapist, it is the child who has chosen not to speak or visit with Ewing-Wegmann.

[¶6] After the parties separated, the child disclosed to Allerding that Ewing-Wegmann had engaged in what Allerding told the child was inappropriate touching,[1] and the child's therapist later made a referral to the Department of Health and Human Services regarding inappropriate sexual behavior by Ewing-Wegmann. The court found that Ewing-Wegmann had on occasion patted the child and pinched the child's "bottom" but that "there [was] no objective or confirming evidence of [other] claimed abuse[.]"

[¶7] The child is "described as extremely articulate, . . . highly intelligent and very perceptive." The child has had longstanding anxiety issues, has been in counseling for years, and more recently has been hospitalized for

---

[1] The GAL testified that that the child "did [not] come to the realization or the belief that [Ewing-Wegmann]'s behavior was inappropriate" until Allerding told the child that Ewing-Wegmann's behavior was inappropriate.

experiencing suicidal ideation. The child, upon learning of impending contact with Ewing-Wegmann, becomes severely "emotionally dysregulated"—upset and unable to manage emotions.

[¶8] The parents share responsibility for both causing and repairing the estrangement between the child and Ewing-Wegmann. "[Allerding] has marginalized [Ewing-Wegmann] in his role as father" and "lack[s] . . . self-awareness as to how her own feelings of antipathy towards [Ewing-Wegmann] have been communicated to the child [] and adversely impacted the child." On the other hand, Ewing-Wegmann needs "to develop his ability to understand and respond [empathetically] [] to the child's needs and 'validate' [the child's] feelings . . . ."

[¶9] The court ordered parental rights and responsibilities to be shared between both parties and awarded primary residence of the child to Allerding. The court awarded Ewing-Wegmann contact with the child for up to ninety minutes on alternating Saturdays each month in a public location without Allerding present.[2] The court ordered video contact between Ewing-Wegmann

---

[2] Prior to each visit, Ewing-Wegmann "shall consult with the child's therapist about the selection of a public location that will address any comfort or safety concerns expressed by the child. [Ewing-Wegmann] shall designate in writing at least 7 days in advance the date and time of the parental contact, with the expectation that the initial contacts should take place during a lunch or meal time in a restaurant like setting."

and the child at least twice a month. The court also encouraged Ewing-Wegmann to keep telephone or internet contact "to a time designated on the weekends in response to specific request[s] by the child." The court also awarded Ewing-Wegmann contact with the child from 9 a.m. to 5 p.m. on Father's Day every year. As part of its determination of child support, the court found that Allerding's annual gross income was $51,525 and Ewing-Wegmann's annual gross income was $56,056. Those findings were incorporated into a child support order requiring Ewing-Wegmann to pay Allerding $139 per week in child support. The court also ordered that Allerding reimburse Ewing-Wegmann $1,825 of the amount he paid toward GAL fees.

[¶10] Allerding timely filed a notice of appeal. *See* 14 M.R.S. § 1901(1)(2023); M.R. App. P. 2B(c)(1).

## II. DISCUSSION

[¶11] "We review the factual findings underlying a divorce judgment for clear error and an award of parental rights and responsibilities for an abuse of discretion." *Whitmore*, 2023 ME 3, ¶ 7, 288 A.3d 799. Contrary to Allerding's contentions, the court did not clearly err or abuse its discretion in ordering shared parental rights. *See* 19-A M.R.S. § 1653(2)-(3) (2023); *see, e.g.*, *Pyle v. Pyle*, 2017 ME 101, ¶¶ 7-9, 162 A.3d 814. The court's judgment included

6

"extensive factual findings" regarding the parties and the child as well as additional findings related to the best interest factors enumerated in 19-A M.R.S. § 1653(3). *Bergin v. Bergin*, 2019 ME 133, ¶ 5, 214 A.3d 1071; *see Whitmore*, 2023 ME 3, ¶ 8, 288 A.3d 799.

[¶12]  "We review determinations of rights of contact for abuse of discretion." *Dube v. Dube*, 2016 ME 15, ¶ 5, 131 A.3d 381.  The court did not abuse its discretion in awarding to Ewing-Wegmann rights of contact with the child on Father's Day. *See id.* ¶¶ 5-8.  The court noted that "there is a risk of emotional harm (and physical distress) to the child as a result of contact that may be 'forced' by the court . . . [therefore,] it is the best interests of the child that the court must address in fashioning relief."  The court laid out specific requirements for other in-person contact—that the father can visit with the child only twice a month, for ninety minutes, in a public place chosen in consultation with the child's therapist so that the child feels comfortable and safe.  When the court issued its judgment, Father's Day was about six months away.  We conclude that the court issued its award in the hope that the parties would by then find a way to cooperate on facilitating Father's Day contact and limit contact by agreement if necessary so as not to force contact contrary to the child's best interest. *Cf. Dube*, 2016 ME 15, ¶¶ 7-8, 131 A.3d 381.

[¶13]  We review for an abuse of discretion the court's decision on allocating GAL fees, and we see no abuse of discretion here.  *Akers v. Akers*, 2012 ME 75, ¶ 8, 44 A.3d 311.  The first two GAL appointment orders requiring Ewing-Wegmann to pay all of the fees attributable to the GAL's work authorized by those orders did not prevent the court from ordering Allerding to contribute to the fees attributable to the court's third order.  The parties agreed that Ewing-Wegmann would pay all of the fees associated with the first GAL appointment order, but the agreement did not bar an allocation of fees incurred as a result of subsequently authorized work, much of which was necessitated by the parties' shared difficulty in co-parenting effectively.  The parties are in a similar financial position to contribute to GAL fees.  Moreover, the court's second amended GAL appointment order stated that the fee for that work could be subject to reallocation.  19-A M.R.S. § 1507(1), (7) (2023); *cf. McMahon v. McMahon*, 2019 ME 11, ¶¶ 13-18, 200 A.3d 789.

The entry is:

Judgment affirmed.

Jeanne C. Sund, Esq., Robinson, Kriger & McCallum, Portland, for appellant Katharine Allerding

Elizabeth J. Scheffee, Esq., Scheffee Law, Gorham, for appellee Neill Ewing-Wegmann

Portland District Court docket number FM-2020-832
FOR CLERK REFERENCE ONLY